E-FILED
Monday, 07 January, 2019  04:56:36 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT
## SPRINGFIELD, ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.16-cr-20044 |
| | ) | |
| GRAYSON ENTERPRISES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## RESPONSE BY GRAYSON ENTERPRISES, INC. TO MOTION BY THE UNITED STATES FOR A GENERAL ORDER OF FORFEITURE

Now comes the defendant, GRAYSON ENTERPRISES, INC.,

d/b/a GIRE ROOFING, by its attorney D. Peter Wise of Gates Wise

Schlosser & Goebel and responds to the Motion by the United States

for a General Order of Forfeiture (#107) stating as follows:

## I.    Background

1.    A history of the forfeiture proceedings in this case is necessary

to respond to the government's claim that it is entitled to a

General Order of Forfeiture pursuant to Fed. R. of Crim. P.

32.2 (b)(2)(C).

**Indictment**

2.  The indictment in this case sought forfeiture of any conveyance used in the commission of the offense, and any property, real or personal that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense, or that is used to facilitate, or is intended to be used to facilitate, the commission of the offense which the person is convicted. The property to be forfeited includes, but is not limited to, the following; the real property commonly known as Grayson Enterprise, Inc. d/b/a Gire Roofing, 309 West Hensley Road,...." (#1 p. 15,16)

3.  The indictment also alleged that "if any property described above, as a result of any act or omission of the defendant: ... b. has been transferred or sold to, or deposited with a third party; ... the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21 United States Code, Section 853(p)..." (*Id* p. 16)

4.  The forfeiture allegation stemmed from counts 5 through 7 of

the indictment. Those counts alleged that on May 28, 2014,
Edwin Gire and Grayson Enterprises, Inc. harbored illegal
aliens. (*Id*, p.13,14)

5.    The trial court heard evidence in a bench trial in this case.
With respect to the forfeiture allegations of the indictment, the
government only presented evidence about 309 West Hensley
Road. The government did not present any evidence regarding
any conveyance that was used in the commission of the
offense. The government did not present any evidence
regarding any property, real or personal, that constitutes or is
derived from or is traceable to the proceeds obtained directly or
indirectly from the commission of the offense.

**Trial Verdict**

6.    This Court found Edwin Gire and Grayson Enterprises, Inc.
(herein after Grayson Enterprises) guilty of harboring illegal
aliens. The Court then addressed the Indictment's forfeiture
allegation. This Court found that the property at 309 West
Hensley Road was used to facilitate the harboring of illegal

aliens. (Verdict, No. 61, p.10)

**Government's Motion for Preliminary Order of Forfeiture and Forfeiture of Substitute Assets**

7.   Following the Verdict, the government moved for a Preliminary Order of Forfeiture of Substitute Assets. (#85) The government's motion alleged that defendants Gire and Grayson Enterprises sold 309 West Hensley Road to Rush Truck Centers of Illinois, Inc. for $3,100,000.00. (#85 par. 5, 7)

8.   Furthermore, the government affirmatively stated that Rush Truck Centers of Illinois, Inc. was a *bona fide* purchaser for value and therefore the United States did not move to set aside the sale of the property. (#85 par. 6)

9.   The government's motion invoked Title 21, United States Code, Section 853(p) which governs the forfeiture of substitute property. Specifically the government alleged that the defendants, Gire and Grayson Enterprises, sold 309 West Hensley Road to Rush Truck Centers of Illinois, Inc. (Herein after Rush Truck Centers) thereby making the property unavailable for forfeiture. (#85 par. 7,8)

10.   The government's motion also listed three pieces of property as substitute assets pursuant to 21 U.S.C. 853 (p) (#85, par. 12) However, these pieces of property did not belong to either the defendant, Gire, or Grayson Enterprises. Two pieces of property the government listed as substitute assets belonged to Quick Leasing, Inc. and the third piece of property was owned by Hensley Market, LLC. (*Id.*) Finally, the government's motion sought the entry of a money judgment against Gire and Grayson Enterprises in the amount of $3,100,000.00, which was the sale price for 309 West Hensley Road.

**Preliminary Order of Forfeiture and Substitute Assets and Money Judgment**

11.   Based on the findings this Court made in its verdict and based on representations made by the government in the Motion for a Preliminary Order of Forfeiture and Forfeiture of Substitute Assets, this Court entered a Preliminary Order of Forfeiture of Substitute Assets and Money Judgment on August 28, 2018 (#88) This Court found that, based upon the representations of the government, 309 West Hensley Road was no longer

available for forfeiture because the defendants, Gire and

Grayson Enterprises sold the property to Rush Truck Centers.

As a result, the Court ordered the money judgment requested

by the government and ordered the forfeiture of the substitute

assets proposed by the government. (#88-2 p.9, 10)

## Pleadings That Followed the Court's Preliminary Order of Forfeiture

12.   Following the entry of the Preliminary Order of Forfeiture,

Grayson Enterprises filed a pleading that responded to the

government's Motion for a Preliminary Order of Forfeiture and

also responded to the Preliminary Order of Forfeiture ordered

by this court. Grayson Enterprises' pleading asked for an order

vacating this Court's Preliminary Order of Forfeiture and

Money Judgment against Grayson Enterprises, Inc. (#91 par.

31, 32)

13.   Grayson Enterprises argued that the government failed to

establish and prove the two requirements of the substitute

property provisions of 21 U.S.C 853 (p). First, Grayson

Enterprises argued that 21 U.S.C. 853 (p) required the

government to prove that as a result of any act or omission by Grayson Enterprises the property subject to forfeiture was no longer available for forfeiture. The government did not establish this requirement because Quick Leasing, Inc. not Grayson Enterprises, sold 309 West Hensley Road to Rush Truck Centers. Second, Grayson Enterprises pointed out that if the forfeiture of substitute assets was appropriate then 21 U.S.C. 853 (p) stated that the Court could order a forfeiture of any other property of the defendant up to the value of the property to be forfeited. But here, the government was proposing property that was not owned by Grayson Enterprises should be forfeited as substitute property. (#91 par. 25-28, see also #97 par. 25,26)

14. The government responded to Grayson Enterprises' arguments by stating that Quick Leasing, Inc. was the nominee of Edwin Gire and Grayson Enterprises with respect to the ownership and sale of 309 West Hensley Road. (#94, p. 3) The government did not offer any factual support for its bare assertion that

Quick Leasing, Inc. was the nominee for the defendants.

15. In response to the government's baseless and unsubstantiated nominee argument, Grayson Enterprises directed this Court to the Seventh Circuit's definition of nominee in the context of property ownership and federal forfeiture in *United States v. Szaflarski*, 614 Fed. Appx. 836 (7th Cir. 2015). The factors listed in that case establish that Quick Leasing, Inc. was not the nominee of Grayson Enterprises or Edwin Gire.

**This Court's Order Vacating the Preliminary Order of Forfeiture and Forfeiture of Substitute Assets**

16. On November 19, 2018 this Court entered an Order vacating its previously entered Preliminary Order of Forfeiture and Forfeiture of Substitute Assets. This Court found that the government had not shown by a preponderance of the evidence that 309 West Hensley Road was transferred, sold or deposited as a result of any action or omission by Edwin Gire or Grayson Enterprises. Additionally, the Court found that the government had not shown by a preponderance of the evidence that any of the three parcels of real property forfeited as substitute asset

were the property of Gire or Grayson Enterprises. Further, this Court ruled that Quick Leasing, Inc. was not the defendant's nominee because the government did not sufficiently link Quick Leasing, Inc. to either Gire or Grayson Enterprises. Lastly, the government did not allege a connection between Hensley Market and either Gire or Grayson Enterprises. (#105 p. 17,18)

17. The government did not ask this Court to reconsider its Order Vacating the Preliminary Order of Forfeiture.

18. The government did not file a Notice of Appeal after this Court vacated the Preliminary Order of Forfeiture and Forfeiture of Substitute Assets.

**II. A General Order of Forfeiture is not a carte blanche, blank check order. Neither Federal Rule of Criminal Procedure 32.2, nor applicable case law allows this Court to enter a General Order of Forfeiture pursuant to 32.2 (b)(2)(C) without first finding that there is property subject to forfeiture pursuant to 32.2 (b)(1)(A) and (B).**

19. The government's motion seeks a "general order of forfeiture that requires the defendants to forfeit all proceeds of and any property or conveyance used to commit or facilitate the

commission of, the offenses for which they were convicted."
(#107 p. 5)

20.   This blank check request is a cut and paste blend of language
      that tracks 18 U.S.C. 982 (a)(6), the forfeiture provision cited
      by the government in the indictment in this case.

21.   The indictment makes reference to only one piece of real
      property, 309 West Hensley Road. Other than this piece of
      property, the forfeiture allegations of the indictment merely
      track the text of 18 U.S.C. 982 (a)(6) and the substitute
      property provisions of 21 U.S.C. 853 (p).

22.   Criminal forfeiture is governed by 21 U.S.C. 853 and Federal
      Rule of Criminal Procedure 32.2.

23.   Assuming proper notice under 32.2 (a), the first two steps of
      the criminal forfeiture process are defined by 32.2 (b)(1) and
      (2). Rule 32.2 (b)(1) sets forth the procedure for determining if
      property is subject to forfeiture: The rule states, "As soon as
      practical after a verdict or finding of guilty, or after a plea of
      guilty ... is accepted, on any count in an indictment or

information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute...." 32.2 (b)(1)(A) is appropriately titled 'Forfeiture Determinations'. 32(b)(1)(B) establishes the hearing process and what evidence the Court may consider when making the determination that property is, or is not, subject to forfeiture. "The court's determination may be made based on evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable. If the forfeiture is contested, on either party's request the court must conduct a hearing after the verdict or finding of guilty." 32.2 (b)(1)(3).

24.  If the Court finds that there is property subject to forfeiture, then the Court moves to step two which is the entry of a preliminary order of forfeiture pursuant to 32(b)(2). Of course, if the Court makes the determination that forfeiture is not appropriate, then there is no need for a Preliminary Order of

Forfeiture.

25. Rule 32.2(b)(2) offers two types of preliminary orders for a judge to consider after making a determination that the government has proved that forfeiture is appropriate. The first type of preliminary order is the specific order defined by 32.2(b)(2)(A). This rule states that "If the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria. ..."

26. The second type of preliminary order contemplated by the rule is the general order defined in 32.2(b)(2)(C). That rule states that "(i)f, before sentencing, the court cannot identify all the specific property subject to forfeiture or calculate the total amount of the money judgment, the court may enter a forfeiture order that: (i) lists any identified properties; (ii) describes other property in general terms; (iii) states that the

order will be amended under Rule 32.2 (e)(1) when additional
specific property is identified or the amount of the money
judgment has been calculated." 32.2(b)(2)(C)

27.   The text of both the specific order and the general order make
it clear that either type of order must be based on and
proceeded by a judicial finding that forfeiture is appropriate.

28.   In 2009, Rule 32.2 was amended to include section
32.2(b)(2)(C), which anticipates the possibility that a court may
not be able to calculate the forfeiture amount owed or identify
all the specific property subject to forfeiture before sentencing.
(*United States v. Arnold,* 878 F.3d 940,944)(10th Cir.2017) The
Advisory Committee's note to the 2009 amendments to Rule
32.2 states that the amendment creating Rule 32.2(b)(2)(C)
explains "how the court is to reconcile the requirement that it
make the forfeiture order part of the sentence with the fact that
in some cases the government will not have completed its post-
conviction investigation to locate the forfeitable property by the
time of sentencing. In that case, the court is authorized to

issue a forfeiture order describing the property in 'general' terms, which may be amended ... when additional specific property is identified. The authority to issue a general forfeiture order should be used only in unusual circumstances and not as a matter of course." Advisory Committee Notes, 2009 Amendments.

29.   The government acknowledges that the general order they seek must be proceeded by a finding by this Court that forfeiture of property is appropriate. First, the government recognizes the text of 32.2 (b)(2)(C) which states that if the Court cannot identify all specific properties subject to forfeiture ... it may describe the property subject to forfeiture in general terms. (#107 p. 5) Next, the government observes that case law recognizes that there will be times when the court must enter an order of forfeiture in general terms. (#107 p. 6)

30.   In fact, all the cases cited by the government involved situations where there was an identifiable basis for forfeiture and a specific reason for a general order of forfeiture. In *United*

*States v. Arnold* 878 F.3d 940(10th Cir. 2014) the defendant

pled guilty to wire fraud and conspiracy to commit wire fraud.

He acknowledged in his plea agreement that the government

would pursue forfeiture. Following Mr. Arnold's conviction but

before sentencing, the District Court granted the government's

motion for a preliminary order of forfeiture. Mr. Arnold was

ordered to pay "a money judgment in an amount to be

determined later by the Court." *United States v. Arnold* 878

F.3d at 941, 942. Prior to sentencing, the government and Mr.

Arnold were engaged in ongoing factual disputes about the

amount of illegal proceeds he retained as a result of his crime.

*Id* at 945. On March 24, 2016, at Mr. Arnold's first sentencing

hearing, the government stated its intent to seek forfeiture

once the precise amount owned could be calculated. The court

sentenced Mr. Arnold to a period of imprisonment and

postponed a final determination on forfeiture. *Id* at 942. On

June 9, 2016 the government moved to amend Mr. Arnold's

Preliminary Order of Forfeiture to impose forfeiture order in a

specific amount. Mr. Arnold objected, arguing the Court lacked jurisdiction to amend the preliminary order after sentencing. The Tenth Circuit ruled that Mr. Arnold failed to demonstrate a Rule 32.2 violation. The Court cited the history of the Rule and the amendment allowing for a general order of forfeiture. The Court noted that Rule 32.2 anticipated the possibility that the court may not be able to determine the amount of the money judgment before sentencing. *Id* at 944.

31. In *United States v. Abrahams* 2014 WL 2532473,(D. Maryland, N.D.) 2014 the parties had entered into Consent Orders of Forfeiture providing that they were jointly and severely liable to forfeit a sum of money equal to the proceeds of the conspiracy for which they had been found guilty. The Consent Orders provided for a general order of forfeiture pursuant to 32.2 (b)(2)(C) and provided that the government could move at anytime to amend General Order once a specific amount was calculated. In this case, the trial court granted the government's motion to amend the consent order of forfeiture

to include the sum of money for which the defendants would be liable. *United States v. Yutronic*, 544 Fed. Appx. 18 (2nd Cir. 2013) is a nonprecedential summary order where the trial court, in sloppy fashion, ordered at sentencing that a defendant forfeit any proceeds gained as a result of his criminal activity in his case. The trial court did not reference Fed. Rule of Crim. P. 32.2 (b)(2)(C) in its Order. In its summary order, the Second Circuit found that it was clear from the record that, prior to sentencing, the District Court was not in possession of the requisite information to enter a specific order. The Second Circuit found that the District Court's order was in the nature of a general order pursuant to 32.2 (b)(2)(C) and vacated and remanded the case to the District Court for clarification as to the amount of the forfeiture money judgment or its intent to amend at a later date. *Id* at 20.

32.  In *United States v. Papas*, 715 Fed. Appx. 88 (2nd Cir. 2018) the defendant entered into a plea agreement regarding the distribution of large quantities of marijuana. As part of the

agreement, the defendant also agreed to forfeit all property constituting or derived from and any proceeds obtained directly or indirectly as a result of his criminal activity. At a hearing on his plea agreement, the defendant confirmed his understanding that the plea agreement required him to admit to the forfeiture allegation contained in his indictment. At sentencing, defense counsel and the government still had not agreed on the forfeiture owed by the defendant. The parties thus requested that the District Court include a general order of forfeiture in its oral pronouncement of the defendant's sentence with the understanding that a more specific order of forfeiture would be forthcoming. *United States v. Papas*, 715 Fed. Appx. at 89. Following the sentencing hearing, the Court held a hearing to resolve the dispute between the parties with respect to the amount of the forfeiture owed. Eventually, the District Court entered an Amended Order of Forfeiture and a $5,000,000.00 money judgment against the defendant. The Second Circuit's Summary Order held that the trial judge's

amendment of the agreed general order of forfeiture was appropriate. *Id* at 90. In *United States v. Ferrario-Pozzi*, 368 F. 3d 5(1st Cir. 2004), a case that preceded the amendment of Rule 32.2 that added to section (b)(2)(C), the defendant pled guilty to participating in a money laundering conspiracy. At a plea hearing the defendant conceded that he would have to forfeit at least $2,000,000.00 of ill-gotten gains but disputed any amount above that. The plea agreement contained a provision permitting the parties to present evidence regarding forfeiture at the time of the sentencing hearing. The First Circuit ruled that the trial court reasonably crafted its written judgment to reflect the extent of the parties' agreement on forfeiture, with the specific amount in subject assets to be determined later. *Id* at 11.

33.   In all of these cases, the defendant had agreed that forfeiture was warranted. But in each case there was a question at the time of sentencing about the amount of money the defendant would be ordered to forfeit. This situation warranted a general

order of forfeiture. Situations where the amount of a forfeiture money judgment is still in question at the time of sentencing are likely to be far more common than a situation where a court cannot identify real property subject to forfeiture at the time of sentencing. These cases do not support the government's bid for a general order of forfeiture that is nothing more than a blank check.

34.  In all of the cases cited by the government a plea agreement provided the basis for forfeiture. In the present case, this Court has not made a determination that any property is subject to forfeiture. This Court vacated its Preliminary Order of Forfeiture. To vacate means to nullify or cancel. (Blacks Law Dictionary, 10th Ed. 2014) There is no finding by this Court that pursuant to 32.2 (b)(1) in this case that there is a basis for forfeiture. Nor has the government presented any unusual circumstances that would allow the court to enter a general order of forfeiture.

35.  The government offers no authority to rebut the clear text of

32.2 (b)(2)(C) that requires a court determination of that property is subject to forfeiture prior to a general order of forfeiture.

**III. Nothing in the government's Motion for a General Order of Forfeiture supports the notion that there are conveyances that were used in the offense, ill-gotten proceeds from the offense, or other property that facilitated in the offense of conviction that have not surfaced in four years of investigation, trial preparation and post-trial forfeiture litigation. The government's Motion for a General Order of Forfeiture is nothing more than a pretext for a do-over, a Mulligan, and another bite at the apple. It is nothing more than an attempt at a back door way around this Court's Order Vacating its Preliminary Order of Forfeiture.**

36.  After two years of investigation that followed the execution of a search warrant at 309 West Hensley Road, Grayson Enterprises was indicted in June of 2016 for offense conduct that occurred in January of 2014 (the visa fraud charged in Count 4) and May of 2014 (the harboring offenses charged in counts 5 through 7).

37.  The case proceeded to a bench trial and was tried over 6 days in November of 2017.

38.  At trial, the government presented evidence of the

improvements that were made at 309 West Hensley Road and that those improvements were specifically designed to house Gire Roofing employees. The government also presented evidence that illegal aliens who worked for Gire Roofing were living at 309 West Hensley Road.

39.   The government did not present any evidence about any other property, real or personal, that constituted or was derived from or was traceable to the proceeds obtained directly or indirectly from the commission of the offense, or that was used to facilitate the commission of the offense.

40.   Surely, between May of 2014 and November of 2017, if the government investigation and trial preparation had turned up any other conveyance or any other real or personal property that was subject to forfeiture, that evidence would have been presented at trial or included in the government's post trial submissions to the Court regarding forfeiture.

41.   When this case was indicted, the government knew about the 2015 sale of 309 West Hensley Road. That is why the forfeiture

allegations included the substitute asset provisions.

42.     Other than the evidence about 309 West Hensley Road

mentioned above, the government did not present any other

testimony or document evidence at trial to prove the forfeiture

allegations.

43.     Here is what government counsel told the Court about the

forfeiture allegations at closing argument. "I'd also note there

are forfeiture allegations in this case, Your Honor. The

defendant, of course, previously waived his right to a trial by

jury, and so we don't believe those allegations will need to be

addressed until after the Court enters its verdicts on the

charged counts." (Tr. Volume 6, p.1199)

44.     In August of 2018, seven months after the verdict in this case,

the government filed its Motion for a Preliminary Order of

Forfeiture and Forfeiture of Substitute Assets.

45.     In that motion, the government alleged that Grayson

Enterprises and Edwin Gire sold 309 West Hensley Road to

Rush Truck Centers. The government knew better than that

because government exhibit number 1 was the Illinois Real Estate Transfer Declaration. This pleading disclosed that Quick Leasing, Inc., whose president was Kimberly Young, was the seller. (#85 - 2)

46. In its motion, the government acknowledged that Rush Truck Centers was a *bona fide* purchaser for value. As a result, the government indicated that it had no interest in undoing the sale. (#85 p. 5, 6)

47. The motion for a preliminary order of forfeiture invoked the substitute asset provisions of 21 U.S.C. 853 (p) and proposed as substitute asset, three pieces of property that did not belong to either Edwin Gire or Grayson Enterprises.

48. In response to the government's motion, both Gire and Grayson Enterprises exposed the flaws in the government's substitute asset argument. First, Grayson Enterprises presented document evidence that Quick Leasing, Inc. owned and sold 309 West Hensley Road to Rush Truck Centers. (#91-1) Second, Grayson Enterprises. pointed out that the

substitute assets proposed by the government were not owned by either defendant as required by statute.

49. In response, the government made the baseless and unsubstantiated assertion that Quick Leasing, Inc. was the nominee of Grayson Enterprises and Edwin Gire.

50. The government could have, but chose not to present a factual basis to support its claim that Quick Leasing, Inc. was the nominee of Gire or Grayson Enterprises.

51. The government could have, but chose not to request a hearing pursuant to 32.2 (b)(1)(B). That Rule states, "If the forfeiture is contested, on either party's request the Court must conduct a hearing after the verdict or finding of guilty." What the government chose to do is lay in the weeds and wait to address their supposed nominee argument at an ancillary hearing they believe would happen. When the government served up its nominee argument it stated, "(a)s a part of the ancillary proceeding, the Court may allow the parties to conduct discovery, which the Government will request, on issues

including whether Quick Leasing, Inc. is merely a nominee of the Defendants and the circumstances surrounding the sale of the property at 309 West Hensley Road, Champaign, Illinois to Rush Truck Centers." (#94, p. 14, 15) However, who sold the property relates directly to the forfeitability of the property under the substitute asset provisions of 21 U.S.C. 853 (p). Forfeitability issues are outside the scope of an ancillary proceeding. The Advisory Committee Notes to Rule 32.2 make it clear that an ancillary proceeding cannot involve relitigation of the forfeitability of the property. "This proceeding [the ancillary proceeding] does not involve relitigation of the forfeitability of the property: its only purpose is to determine whether any third party has a legal interest in the forfeited property." (Advisory Committee Notes to Rule 32.2) So the government could not have done what they thought they were going to do.

52. More importantly, this Court's order vacating its preliminary order of forfeiture ruined the government's plan. The Court's

order accepted the arguments of Grayson Enterprises and Edwin Gire finding "that the Government has not shown by a preponderance of the evidence that the West Hensley Road property was transferred, sold, or deposited as a result of any action or omission by Gire or Grayson Enterprises. Further, the Court finds that the Government has not shown by a preponderance of the evidence that any of the three parcels of real property forfeited as substitute assets in the Preliminary Order of Forfeiture is the property of Gire or Grayson Enterprises" Also, the Court ruled that "(a)lthough the Government takes the position that Quick Leasing is the Defendants' nominee, the Government has not sufficiently linked Quick Leasing to either Gire or Grayson Enterprises. Further, the Government does not allege a connection between Hensley Market and either Gire or Grayson Enterprises. Because the Government has not met its burden on these issues, the Court is not authorized to order the forfeiture of substitute asset pursuant to 21 U.S.C. Section 853 (p)." (#105

p. 17,18)

53.  Now, in its motion for a general order of forfeiture, the
     government engages in some factual revision in an attempt to
     reopen the door on its nominee argument. Rush Truck Centers
     has now been downgraded to "an *apparent bona fide* purchaser
     for value." (#107 p. 3), (*emphasis added*) Now, Quick Leasing,
     Inc. only "technically owned and sold the property." (#107 p. 4)
     And this alleged technical ownership "shield[ed] the property,
     sale proceeds, and any substitute assets from forfeiture." *Id.*

54.  Additionally, the government engages in some wishful thinking
     when stating that in the order vacating the preliminary order of
     forfeiture "[t]his Court indicated that the result would be
     different if Quick Leasing were sufficiently linked to either Gire
     or Grayson Enterprises." (#107 p.4) This Court's order did
     nothing of the sort. The order simply stated that the
     government's evidence did not sufficiently link Quick Leasing
     to either Gire or Grayson Enterprises and the government did
     not allege a connection between Hensley Market and either

Gire or Grayson Enterprises, Inc. (#105 p. 18)

55.   The government accuses the defendants of attempting to
minimize the relationship between Quick Leasing and
themselves because Quick Leasing owned 309 West Hensley
Road and "*merely*" leased it to Grayson Enterprises, Inc. (#107
p. 9)(*emphasis added*) The government accuses Gire or
Grayson Enterprises, Inc. of overlooking the fact that Kimberly
Young was both the president of Quick Leasing, Inc. and
Grayson Enterprises. In fact, Grayson Enterprises, Inc.
presented document evidence of the lease agreement between
Quick Leasing and Grayson Enterprises, Inc. as well as
Kimberly Young's position with both of her corporations. (#91-
1, Grayson Ex. A, B, C, D, E) It is a very common practice in
today's business world for a business person to be the
president of multiple corporations. Furthermore, it is a
common practice for an owner of multiple corporations to lease
property in the manner of the lease between Quick Leasing,
Inc. and Grayson Enterprises, Inc.

56.    The government cites trial testimony in its belated attempt to convince this Court that Quick Leasing was the nominee of Grayson Enterprises and Gire in an attempt to gain a general order of forfeiture. The trial testimony cited by the government was presented by the defense only as background information about 309 West Hensley Road. The government did not present any testimony regarding legal ownership of 309 West Hensley Road. Nor did government counsel did not cross examine Kimberly Young regarding who owned Quick Leasing, Inc. or how 309 West Hensley Road was purchased and who owned it, even though the government was aware that Quick Leasing, Inc. purchased the Hensley Road property. Nor did the government cross examine Kimberly Young regarding any relationship between Quick Leasing, Inc. and Grayson Enterprises, Inc. Now, the government scolds the defendants for not mentioning Quick Leasing, Inc. When presenting case evidence. (#107 p. 9) However, it was the government's burden to prove the elements of the substitute assets provisions of 21

U.S.C. 853 (p).

57.   The government's unwarranted spinning of facts leads to its conclusion that "the obfuscation of forfeitable property in this case demonstrates why the law allows this Court to enter a General Order of Forfeiture, subject to later amendment, once the government has had an opportunity to complete its post-conviction investigation." (#107 p. 10,11) The case law cited by the government does not support this conclusion. In those cases an undisputed forfeiture resulted in a money judgment against the defendants. The amount of the money judgment had not been determined at the time of sentencing making a general order appropriate. Nor does Rule 32.2 (b)(2)(C) support the government's position that after the Court denies the government's motion for a preliminary order of forfeiture for specific property, the government can seek a blank check general order of forfeiture to be used as a pretext in an effort to forfeit the same piece of property. Finally, the government misrepresents the availability of discovery as a tool to identify

and locate properties subject to forfeiture. The government proposes broad discovery powers after this Court grants its motion for a general order of forfeiture. However, 21 U.S.C. 853 (m) allows only limited discovery. That rule states that "[i]n order to facilitate the identification and location of property declared forfeited ... the court may, upon application of the United States, order that the testimony of any witness relating to the property forfeited be taken by deposition" and that documents may be produced at such a deposition. Thus, in order for the United States to conduct discovery under this rule there must be a court order declaring property forfeited. The same is true of Rule 32.2 (b)(3). This provision of the rule titled "Seizing Property" indicates that after the entry of a Preliminary Order of Forfeiture the Attorney General may conduct any discovery the Court considers proper in identifying, locating or disposing of the property. The rule's baked in limitations are a far cry from the free ranging discovery the government claims it has a right to in its motion

for a general order of forfeiture.

## Conclusion

The government's bid for a general order of forfeiture must be denied. The proposed general order is a blank check, carte blanche order that is not supported by law or statute. A general order of forfeiture must be preceded by a judicial finding that property is subject to forfeiture. The general order then relates the circumstances that prelude the Court from identifying all of the property subject to forfeiture or calculate the amount of a money judgment. Moreover, the Rules Advisory Committee cautioned that a court should use its authority to issue a general forfeiture order only in unusual circumstances. The government's motion does not present any unusual circumstances that would warrant the unusual step of a general order of forfeiture. Its motion is merely an attempt to reopen the preliminary order of forfeiture that the Court vacated. In any event, if this Court grants the government's motion, 309 West Hensley Road and the three properties previously identified as substitute assets must be excepted from the order.

That property has previously been identified and this Court has

ruled that it is not subject to forfeiture.

> Respectfully submitted,
> Grayson Enterprises, Inc.- Defendant
>
>
> s/ D. Peter Wise _____

D. Peter Wise, Bar Number: 6187876
Gates Wise Schlosser & Goebel
1231 South Eighth Street
Springfield, IL. 62703
Telephone:  217/522-9010
Fax: 217/522-9020
E-Mail:  peter@gwspc.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 7, 2019, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system which will send notification of such filing to the following:

Eugene Miller
Assistant United State's Attorney
201 South Vine Street
Urbana, IL 61802

Gail Noll
Assistant United State's Attorney
201 South Vine Street
Urbana, IL 61802

J. Steven Beckett
Beckett Law Office, P.C.
508 South Broadway
Urbana, IL 61801

Lawrence Solava
Beckett Law Office, P.C.
508 South Broadway
Urbana, IL 61801

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

**<u>s/ D. Peter Wise</u>**
D. Peter Wise, Bar Number: 6187876
Gates, Wise, Schlosser & Goebel
1231 South Eighth Street
Springfield, IL. 62703
Telephone:  217/522-9010
Fax: 217/522-9020
E-Mail:  peter@gwspc.com